Filed 10/30/15  Capous v. Foley CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS CAPOUS, | B253867 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC517846) |
| v. | |
| WILLIAM P. FOLEY II et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Nicholas Capous, in pro. per., for Plaintiff and Appellant.

Fidelity National Law Group, Jordan Trachtenberg and Kevin R. Broersma for Defendants and Respondents.

_____

**INTRODUCTION**

More than twenty years after the Respondents' allegedly actionable conduct, Appellant filed suit. In this appeal, Appellant asserts that the trial court erred in sustaining the Respondents' demurrer without leave to amend. The trial court ruled that Respondent Foley was not an appropriate party to the action because Appellant had not alleged facts sufficient to support individual liability of a corporate director or officer. In addition, the trial court found that the statute of limitations barred this action. The "discovery rule" did not toll the statute of limitations because Appellant possessed all material facts that would put a reasonable person on notice to inquire in 1990. Nor did Appellant suffer from a mental disability sufficient to toll the statute of limitations for twenty years.

Appellant asserts a number of new issues for the first time on appeal, including alternative causes of action and additional doctrines of tolling. Although none of these arguments were presented to the trial court, we consider these new contentions to see if Appellant can meet his burden that a reasonable probability exists that amendment can cure the statute of limitations defect. Appellant cannot.

As the trial court correctly found that the statute of limitations was something that Appellant could not possibly overcome, the judgment of dismissal was correct and we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On or about March of 1990, Appellant Nicholas Capous closed escrow on the sale of his property in Rolling Hills, California. That closing occurred at the offices of Warranty Escrow. The final closing statement, dated March 19, 1990, listed, among the various debits recorded in that document, $65,791.76 as an "indemnity hold." According to Appellant, he did not know what an indemnity hold was. Appellant, his attorney, Robert Burlison, and a representative of the escrow company were at the closing.

Sometime in 2011, a friend of Appellant told him that an indemnity hold was really a ruse by which conspirators tricked sellers out of their money. Appellant thereafter went to Ticor, which appears to have issued a title insurance policy as part of Appellant's closing. According to Appellant, Ticor confirmed that the funds were "in their computers," and advised Appellant to go to Chicago Title to "get [his] money." After apparently not being given any money, Appellant then made a claim for the money to Chicago Title, a subsidiary of non-party Fidelity National Title Insurance Company ("Fidelity").

In July 2011, Fidelity denied appellant's claim. Fidelity explained that after more than two decades, it no longer had the information necessary to identify the funds denominated as an "indemnity hold" on the Warranty Escrow closing statement, nor could it determine whether Ticor, or any Fidelity-related entity, ever held the indemnity funds.

Appellant filed suit on August 9, 2013, and alleged an intentional tort. Appellant named his former attorney, Robert Burlison, William P. Foley II, President of Fidelity National Title, Chicago Title, Ticor Title, and Warrantee Escrow as defendants.

Respondents William P. Foley II (erroneously sued as William P. Folley II and as President of Fidelity National Title), Chicago Title Insurance Company (erroneously sued as Chicago Title), and Ticor Title Company of California (erroneously sued as Ticor Title) demurred to the entire complaint. These defendants asserted that Foley, the Chairman of the Board of Directors for Fidelity National Financial, Inc., was improperly sued in his individual capacity with no actionable facts alleged to support personal liability. They also argued that the statute of limitations barred the suit entirely.

In his opposition to the demurrer, Appellant attempted to allege new theories of liability and to attach certain additional documents. Although outside of the scope of the initial complaint, the Respondents addressed these additional arguments. Appellant also filed an improper sur-reply the day before the hearing on the demurrer.

On December 16, 2013, the court sustained Respondents' demurrer without leave to amend. The court found that Respondent William P. Foley II could not be sued in his

individual capacity for the wrongs alleged in the complaint. Appellant had not alleged any facts that would suggest that Foley had participated in the creation of an "indemnity hold" during Appellant's 1990 escrow, nor had he authorized or directed such conduct. Given that directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, the complaint failed to state a claim and Appellant offered no allegations to support the possibility of amendment.

The court also found that the complaint was time-barred. The applicable statute of limitations for the intentional tort of fraud and conversion is three years. The alleged misdeeds underlying the complaint occurred in 1990. The court rejected the application of the discovery rule in this case to excuse the lateness of the filing in this case. In addition, the court found that Appellant did not meet the standard for tolling the statute of limitations under Code of Civil Procedure section 352(a). Appellant did not allege that he was insane or suffering from a mental condition that rendered him incapable of caring for his property or transacting business. The trial court entered a judgment of dismissal in favor of Chicago Title Insurance Company, Ticor Title Company of California and William P. Foley II against Appellant.

Appellant appealed.

## DISCUSSION

1. *Standard of Review.*

On appeal following the sustaining of a demurrer, application of the statute of limitations is purely a legal question; accordingly, we review the lower court's ruling de novo. (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) We must take the allegations of the operative complaint as true and consider whether the facts alleged to establish Plaintiff's claims are barred as a matter of law. (*Ibid.*; see also *Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 810–811 (*Fox*).) However, we "do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed." (*Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 221.)

4

"When determining which statute of limitations applies to a particular action, a court considers what the principal purpose or 'gravamen' of the action is, rather than the form of action or the relief demanded." (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194; *Day v. Greene* (1963) 59 Cal.2d 404, 411; *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 274.) "Which statute of limitations governs in this situation is a legal issue subject to our de novo review." (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880.)

2.     *Appellant's Action Is Barred by Section 338's Three-Year Limitations Period.*

As a predicate matter, we conclude that Code of Civil Procedure section 338 supplies the applicable three-year limitations period for the cause of action asserted in the complaint. The gravamen of appellant's claim is the title companies did not have any reason to withhold funds from the escrow in 1990 as an "indemnity hold" and their deceptive retention of those monies at closing is actionable. Either as a tort or as a quasi-contract action which seeks recovery of money obtained by conversion, deceit or mistake, the statute of limitations would be three years. (See *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 356; *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1317 (*E-Fab, Inc.*).)

Due to the passage of more than two decades, however, the differences in various statutes of limitations are unlikely to affect the outcome. Rather, the critical issue presented in this case is accrual. (See *E-Fab, Inc., supra*, 153 Cal.App.4th at p. 1317.) Appellant asserts that his cause of action did not accrue until 2011, when a friend explained to him that he had been cheated out of his money by the use of an "indemnity hold." The trial court rejected that contention and, as shown below, so do we.

As a rule, the statutes of limitations start to run when a cause of action is complete. (*Rose v. Dunk-Harbison Co.* (1935) 7 Cal.App.2d 502, 505-506.) While there are some well-recognized exceptions to the rule, the fact that the injured party is without knowledge of the wrong committed does not necessarily toll the statute. (*Ibid.*) "A cause of action is not suspended merely because a party is ignorant of the fact that he has a

5

cause of action or of the identity of the one who committed a certain act." (*Ibid.*) That appellant subjectively was unaware of the cause of action until he was told by a friend does not operate to excuse a delay of over twenty years in filing the complaint.

The discovery rule may postpone the accrual of a cause of action. (*Fox, supra,* 35 Cal.4th at pp. 806-807.) But, the discovery rule does not delay accrual indefinitely. Rather, the statute of limitations is tolled only until the plaintiff has, or should have, inquiry notice of the cause of action. (*Id.* at pp. 807-808.) Plaintiff is, under this rule, required to conduct a reasonable investigation after becoming aware of an injury and is charged with knowledge of the information that would have been revealed by such an investigation. (*Id.* at p. 808*.)*

In this case, appellant received the final closing statement arising out of the sale of his house in March 1990. That settlement statement clearly and unambiguously discloses the existence and the amount of an indemnity hold as part of the escrow. At that time, appellant had the unfettered opportunity to inquire -- of his attorney, of the escrow company or of the title company -- regarding the purpose of that indemnity hold and the duration that such monies would be held before distribution. The information on the closing statement provided him with facts that would have put a reasonably prudent person on notice to inquire as to the purpose of the charge and, if the purpose were fraudulent or unjustified, to allege such a cause of action within the limitations period.

The case upon which appellant relies, *Fuller v. First Franklin Financial Corporation* (2013) 216 Cal.App.4th 955 (*Fuller*), is distinguishable from the facts in this case. In *Fuller*, the plaintiffs alleged that the defendants procured an artificially inflated appraisal and failed to disclose that misconduct to the plaintiffs. (*Id.* at pp. 963-964.) Plaintiffs relied on their ability to refinance their loan in the future due to existing equity to enter into an unfavorable mortgage that resulted in foreclosure. (*Ibid.*) The complaint also alleged that the mortgage broker made misrepresentations regarding the unavailability of more favorable loans in order to steer them to First Franklin, which paid the broker illegal kickbacks. (*Ibid.*)

6

In this case, the closing statement expressly noted an "indemnity hold." Assuming *arguendo* that respondents had a duty to disclose any "indemnity holds" being placed on the proceeds from the sale, the closing statement prepared by Warranty Escrow did so. The allegations in the complaint and its attachments demonstrate that Appellant was on notice of that fact in March of 1990. If Appellant questioned the propriety of such a deduction, he had everything that would lead a reasonably prudent person to inquire at that time.[1]

Appellant asserts that he was mentally unable at that time to undertake such an inquiry. That contention, however, fails to support a tolling of the statute of limitations for over two decades. Under Code of Civil Procedure section 352, the statute of limitations is tolled if the plaintiff is mentally incompetent at the time that the cause of action accrued. (*Larsson v. Cedars of Lebanon Hospital* (1950) 97 Cal.App.2d 704, 707.) Under that provision, the statute of limitations will be tolled during his period of incapacity. (*Feeley v. Southern Pacific Transportation Company* (1991) 234 Cal.App.3d 949, 952 (*Feeley*).) As used in this provision, the term "insane" is defined as mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts. (*Id.* at p. 952.)

While Appellant experienced great stress from the death of his son in 1986 and the departure of his wife and children in 1990, he demonstrated the capacity to contract and to conduct business by the very transaction -- the sale of his residence -- from which the instant action arose. He appreciated the need to save the residence from foreclosure, he understood the need to retain Mr. Burlison as his attorney on the transaction. He relocated to Costa Rica to be close to his children and in a more healthful climate. These

---

[1] Appellant's reliance on *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, is misplaced. In this case, there is no ambiguity in the term "indemnity hold" that would require a court to interpose one interpretation of an allegation in the complaint over another. The court did not reach Appellant's substantive allegations, instead basing its ruling on the statute of limitations.

7

actions belie Appellant's claim that he was incapable of caring for his property or transacting business or understanding the nature of his acts to a degree sufficient to toll the statute of limitations. (See, *e.g., Feeley*, *supra*, 234 Cal.App.3d at p. 951 [statute tolled while plaintiff was unconscious]; *Weinstock v. Eissler* (1964) 224 Cal.App.2d 212 217 [statute tolled due to plaintiff's severe brain damage].) Based on the allegations in the complaint, the court correctly concluded that Appellant did not meet the standard for tolling on the basis of disability.

3. *Appellant Fails to Demonstrate the Complaint Can Be Amended.*

For the first time on appeal, Appellant makes several new arguments in an effort to meet his burden that a reasonable probability exists that amendment can cure the statute of limitations defect.

Appellant posits new causes of action with slightly longer statutes of limitations. For example, Appellant argues that the four year statute of limitations for unfair competition ought to apply and asks for leave to amend to allege such a cause of action. Where, as here, the complaint was filed 20 years after the allegedly actionable conduct, adding one more year to the statute of limitations does not constitute a reasonable possibility that this defect can be cured.

Appellant also asserts a number of other theories upon which the accrual of his cause of action could be delayed: (1) equitable estoppel, (2) fraudulent concealment, (3) equitable tolling, or (4) a continuing violation theory. Entertaining these never-before-litigated theories in assessing whether the complaint could be amended to overcome the statute of limitations, we still must conclude that all of the actions are barred by the statute of limitations. (See *Hendy v. Losse* (1991) 54 Cal.3d 723, 742).

Two of the tolling doctrines asserted by appellant in his opening brief -- equitable estoppel and fraudulent concealment -- require the complaint allege some conduct by the respondents capable of supporting these theories. To assert tolling predicated on equitable estoppel, a party must allege some conduct on the part of the defendant that induced inaction. (*Vu v. Prudential Property & Casualty Insurance Company* (2001) 26 Cal.4th 1142, 1152-1153. To support a claim of fraudulent concealment, appellant would

need to allege supporting facts that the respondents' concealment of a cause of action caused the claim to grow stale. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 533.) In this case, however, viewing the complaint in its most favorable light, there are no allegations that the respondents' conduct occasioned reliance or constituted concealment. The use of an unambiguous and clear description of an "indemnity hold" on a closing statement cannot be alleged to be intentionally or deliberately mislabeled. (*Cf., e.g., Fuller, supra,* 216 Cal. App. 4th at p. 964.)

Nor do the doctrines of equitable tolling or continuing violation apply to avoid the limitations bar in appellant's case. Equitable tolling may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations notice function has been served. (*Aryeh, supra,* 55 Cal.4th at p. 1192.) There is no evidence that appellant pursued any remedies from 2000 until 2011. Nor does the continuing violation doctrine apply in this case. That doctrine aggregates a series of wrongs or injuries and accrues the cause of action upon the commission of the last of them. (*Ibid.*) The wrong alleged in this complaint was discrete and independently actionable in 2000. There are no continuing obligations or recurrent duties alleged that could support treating the application of the continuing violation doctrine to toll the statute of limitations for over twenty years.

4.      *No Basis for Personal Liability against Respondent William P. Foley II.*

Although Appellant makes a number of accusations directed at Respondent Foley, his complaint fails to allege any facts that would support personal liability for Fidelity's Chairman, William P. Foley II. The allegations in the complaint regarding Foley arise exclusively due to his official position as the President of Fidelity. Officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position unless they participate in the wrong or authorize or direct that it be done. (*Michaelis v. Benavides* (1998) 61 Cal.App.4th 681, 686.) There is no allegation that Foley personally participated in or had any role in the preparation of escrow documents associated with the sale of Appellant's home in 1990 or the creation of an indemnity hold in relation to that sale.

9

## DISPOSITION

The judgment is affirmed.  Defendants and Respondents William P. Foley II, Chicago Title Insurance Company and Ticor Title Company of California are awarded their costs on appeal.


JONES, J.[*]

We concur:


ALDRICH, Acting P. J.


LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.